UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6: 08-112-KKC

GLENDA S. WATKINS,                                                    PLAINTIFF

v.                                    **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                     DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the Cross Motions for Summary Judgment filed by the Plaintiff, Glenda S. Watkins [R. 10], and the Defendant, Commissioner Astrue [R. 11]. For the reasons given below, the Court will **DENY** the Plaintiff's Motion for Summary Judgment and **GRANT** the Defendant's Motion for Summary Judgment.

## I.      Factual and Procedural Background

On April 6, 2006, the Plaintiff, Glenda S. Watkins, filed her applications with the Social Security Administration for a period of disability and disability insurance benefits. Plaintiff alleges that she became disabled on October 1, 2003 due to the impairments of fibromyalgia, nerve problems, migraines, degenerative disc disease, degenerative joint disease, high blood pressure, and diabetes. Transcript [hereinafter "Tr."] at 139; Plaintiff's Motion for Summary Judgment [hereinafter "Plaintiff's Motion"] at 2; Defendant's Motion for Summary Judgment [hereinafter "Defendant's Motion"] at 2. Plaintiff also filed a previous application for a period of disability and disability insurance benefits on June 8, 2004, in which she alleged disability beginning on July 23, 2003 due to same alleged impairments mentioned above. Tr. at 76, 78.

1

The Administrative Law Judge [hereinafter "ALJ"] found that she had only the severe impairments of degenerative joint disease and non-insulin dependent diabetes, that none of these impairments met or medically equaled one of the listed impairments in the Social Security regulations, that she had the residual functional capacity [hereinafter "RFC"] to perform medium exertional work, and that there were jobs available that Plaintiff could still perform.  Tr. at 78-82.

Plaintiff alleges that the pain from her impairments is so severe that she is unable to function.  Tr. at 139.  She states that her pain is located in her arms, back, hips, and legs. Plaintiff claims that this pain happens every day, for variable periods of time, and that all of it has gotten worse.  Tr. at 189-90.  She is currently taking several prescription medications that she says relieve her pain temporarily, including Fioricet, Micardis, Percocet, Imipramine, and Lyrica. Tr. at 143, 191, 223, 224.  Plaintiff also says that she will try to relieve her pain by soaking in a hot water bath for one to three hours at a time.  Tr. at 190.

Plaintiff says that on "good days" she is able to do a variety of activities, such as dusting, laundry, washing dishes, and some vacuuming.  Normally, she reads, watches television, does puzzles, prepares quick meals, cares for her personal needs, talks on the telephone, sits on her porch, walks in her yard and on the street behind her house, goes shopping, drives a little, visits with family, and manages her and her husband's finances.  Plaintiff says that she stays in her house at most times.  Tr. at 171-76.  Plaintiff claims that she can only walk ten to fifteen minutes due to her pain and that she needs to rest for twenty to thirty minutes before she can walk again. Tr. at 177.  She claims that her impairments affect her other physical functions, like standing, sitting, squatting, bending, and lifting, and that she is unable to handle stress when her pain is intense.  Tr. at 177-78.  Plaintiff also says that she does not like to be around crowds of people

anymore.  Tr. at 193.

Plaintiff's administrative record contains medical and clinical records from at least as far back as 2003.  However, as the present ALJ pointed out, Plaintiff's prior disability application was denied by a previous ALJ on March 23, 2006, and her decision was upheld by this Court on May 30, 2007.  The previous disability determination, which considered medical evidence from the period of July 23, 2003 to March 23, 2006, is an administratively final decision, and cannot be reconsidered by the present ALJ or by this Court.  ALJ's Opinion at 1, 5.  The present ALJ's review of Plaintiff's claim was thus restricted to record evidence dating after March 24, 2006, the first date of the unadjudicated disability period, and was limited to the issue of whether Plaintiff's medical condition has deteriorated since that date.  ALJ's Opinion at 5; *see Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).  Accordingly, the Court will discuss the relevant record evidence only from that restricted period of time.

Plaintiff underwent a consultative examination by Dr. Kevin J. Croce on June 17, 2006.  Plaintiff complained of daily low back pain, migraines, and fibromyalgia.  Plaintiff described the low back pain as a four or five on a one-to-ten scale, sometimes escalating to a ten.  She said that the pain is better with heat, lying down, and medications, and that it is worse with standing, lifting, carrying, and bending.  Tr. at 255.  She also claimed that she can only sit for ten to fifteen minutes at a time and can only walk for five minutes or half a block at a time.  Tr. at 255-56.  Plaintiff said that she experiences approximately three migraines of variable length per week, and that Fioricet brings some relief but no other medication does.  Tr. at 256.  Plaintiff also said that her fibromyalgia causes pain all over her body and that her medication brings no particular relief.  Tr. at 256.

3

On examination, Dr. Croce stated that Plaintiff was alert, was oriented times three, had a congruent mood and affect, and had no behavioral abnormalities. Plaintiff had no clubbing, cyanosis, or edema in her extremities, her back demonstrated no evidence of scoliosis or spasms, and she had point tenderness over her lower lumbar spine. Tr. at 257. Plaintiff's straight leg raising was limited in the supine position at forty-five degrees bilaterally, but was within normal limits in the seated position at eighty degrees bilaterally. Plaintiff was able to perform gait, station, heel, toe, tandem walk, and knee squat without significant difficulty, and there was no evidence of motor dysfunction, sensory loss, or reflex abnormalities. Tr. at 257-58. Dr. Croce noted very mild range of motion limitations in Plaintiff's bilateral hips and knees, a decreased range of motion in her lumbar spine flexion from ninety to seventy degrees, and an otherwise normal orthopedic examination. Tr. at 257. Plaintiff denied any symptoms of chest pain. Tr. at 258. Her physical examination was otherwise normal. Tr. at 258. Dr. Croce opined that Plaintiff has the ability to perform activities involving sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking, and traveling; but also said that she might have difficulty with activities that require constant or repetitive bending of the lumbar spine, running, climbing multiple flights of steps, or that would involve high cardiovascular stress. Tr. at 257-58.

On July 22, 2006, Plaintiff was interviewed by consultative examiner Dr. Syed Raza. Dr. Raza noted that Plaintiff was cooperative, had normal posture and gait, had an anxious mood, and had a congruent affect. Plaintiff's thought process was logical, sequential, and goal-oriented; she had no distractibility; she was alert; and she was oriented to place, person, situation, and contact with reality. Tr. at 262. Plaintiff was unable to do a digit-span test and could not recall

4

three objects, but otherwise performed well in testing.  Tr. at 263.  Plaintiff had not had any

inpatient psychiatric treatment and was taking depression pills, but could not remember which

pills.  She had also not undertaken any physical therapy or surgical procedures and could not

remember the name of her diabetic pills.  Tr. at 263.  Dr. Raza stated that Plaintiff exaggerates

her current daily activity.  Plaintiff said that she has trouble standing for more than ten minutes

and that she cannot cook, vacuum, or mop, but that she can do light household chores, shower,

manage a budget, and care for her personal grooming and hygiene.  Dr. Raza reported that

Plaintiff has good interactions with family but not with neighbors, friends, co-workers, or

supervisors; that she is fair with decision-making, attention, and pace; and that she is unable to

complete tasks in a timely manner due to back pain from bending.  Tr. at 264.  Plaintiff also

reported crying fits, decreased energy and motivation, mood changes, and aggravation.  Tr. at

265.

  Dr. Raza diagnosed Plaintiff with post-traumatic stress disorder and mood disorder with

the general medical condition, fibromyalgia, migraines, degenerative joint disease, hypertension,

diabetes, and B12 deficiency.  Tr. at 265.  Dr. Raza assessed Plaintiff's global assessment of

functioning [hereinafter "GAF"] as sixty-five, current of score sixty, and gave her a "guarded"

prognosis.  Dr. Raza reported that Plaintiff is not medicated for post-traumatic stress disorder and

that she has not followed up with qualified mental-health professionals.  Tr. at 265.  Dr. Raza

opined that Plaintiff has a fair understanding, can remember simple one to two-step instructions,

and has sustained concentration and persistence to complete tasks, but that she is unable to

complete tasks in normal amounts of time when the tasks require back bending.  Dr. Raza stated

that Plaintiff has fair social interactions with friends, providers, and the public, that she has poor

coping skills, and that she responds to pressures abnormally.  Tr. at 265.

Plaintiff visited Dr. Steven Morgan on April 17, 2006 over complaints of adverse drug reaction, headaches, and low back pain.  Tr. at 334.  Dr. Morgan described Plaintiff at this time as well-developed, well nourished, and alert.  Tr. at 336.  Dr. Morgan diagnosed Plaintiff with adverse drug reaction thoraxine for migraine, migraine unstable, and acute and chronic low back pain unstable.  Tr. at 334.  Plaintiff again visited Dr. Morgan on August 7, 2006 because of complaints of global myalgia, refractory headaches, stress, and for blood pressure review.  Tr. at 283.  Dr. Morgan reported that Plaintiff's mood was normal and that she was oriented times three, that she was well-developed and well nourished, that she was alert, and that she was under no distress.  Tr. at 285-86.  Dr. Morgan's diagnosis was the following: FMA unstable secondary stress, refractory migraine unstable secondary stress, benign hypertension accelerated secondary stress, OPD bed, and migraine relief.  Tr. at 283.  Plaintiff also presented at Pineville Community Hospital on August 7, 2006 over complaints of migraine headaches over the previous eight days.  Tr. at 267-81.  She rated the pain as a five to six on a one-to-ten scale.  Tr. at 278.  She was discharged the same day and kept on her medications.  Tr. at 267-81.

Dr. Morgan again examined Plaintiff on November 15, 2006.  He described Plaintiff as well-developed, well nourished, alert, and in no distress.  Tr. at 354.  Dr. Morgan diagnosed Plaintiff with hypertension, diabetes mellitus-2, migraines, degenerative disc and joint disorder, stress h/a, low back pain, and menorrhagia.  Tr. at 352.  On February 1, 2007, Dr. Morgan again described Plaintiff as well-developed and nourished, alert, and in no distress.  Tr. at 350.  Plaintiff's complaints at this time were earaches, headaches, dizziness, and confusion.  Tr. at 348.  Dr. Morgan stated that he was concerned about Plaintiff's migraines versus other CNS diseases.

6

He noted that Plaintiff is unable to perform additional studies and that after a complete

discussion, Plaintiff agreed to monitor her condition.  Tr. at 348.  In all of Dr. Morgan's reports

discussed above, he noted that there were "no changes" in Plaintiff's condition.  On March 19,

2007, Dr. Morgan again reported that Plaintiff was well-developed, well nourished, and alert, and

that she complained of low back pain, headaches, and needed a blood pressure review.  Tr. at

361-64.  Dr. Morgan diagnosed Plaintiff with benign hypertension, migraines, and chronic low

back pain.  Tr. at 361.

On August 14, 2006, state agency examiner Amy Ping assessed Plaintiff's physical RFC.

Ping opined that Plaintiff can lift twenty-five pounds frequently and fifty pounds occasionally,

can sit, stand, and walk six hours in an eight-hour workday, and is unlimited in her pushing and

pulling.  Tr. at 289.  Ping stated that Plaintiff can never climb ladders, ropes, or scaffolds and can

only occasionally climb ramps or stairs, but assessed no other postural limitations.  Tr. at 290.

Plaintiff was also to avoid all exposure to hazards, like machinery or heights.  Tr. at 292.  Ping

explained that she considered Plaintiff's allegations of her pain and her functional abilities to be

only partially credible, and that she gave great weight to Dr. Croce's report.  Tr. at 293-94.  State

agency examiner Dr. P. Saranga also provided an RFC assessment on December 1, 2006, that

specified the same limitations in Plaintiff's functional abilities as those in Ping's report.  Tr. at

324-31.

State agency examiner Ed Ross completed a psychiatric review of Plaintiff on August 25,

2006.  Ross opined that Plaintiff's mental impairments of affective disorder NOS and post-

traumatic stress disorder were not "severe."  Tr. at 296-305.  Ross stated that Plaintiff had only

mild limitations in her activities of daily living, in maintaining social functioning, and in

maintaining concentration, persistence, or pace, and that her medical evidence does not establish the "C" criteria of the Social Security listings. Tr. at 306-07. Ross explained that Plaintiff's credibility was compromised, that she did not provide a mental treating-source opinion, and that she did not credibly describe any severe impediment to the discrete mental aspects of work. Ross further explained that he placed little weight on Dr. Raza's medical-source statement and instead adopted the ALJ's opinion, noting that there was no new and material evidence available. Tr. at 308. On November 30, 2006, state agency examiner Ilze Sillers adopted Ross's psychiatric review, adding only that Plaintiff had generalized anxiety disorder in addition to post-traumatic stress disorder. Tr. at 310-23.

On August 13, 2007, Dr. Morgan submitted an opinion about Plaintiff's physical ability to do work-related activities. Dr. Morgan stated that Plaintiff can lift ten pounds occasionally and less than ten pounds frequently, and can stand, walk, and sit less than two hours in an eight-hour workday. Tr. at 369. He reported that Plaintiff can sit fifteen minutes and stand five minutes before changing position, that she must walk around five minutes at thirty-minute intervals, and that she needs to be able to shift and lie down during the day. Tr. at 369-70. Dr. Morgan also stated that Plaintiff can never twist, stoop, crouch, or climb ladders and stairs, is restricted in pushing and pulling, must avoid all exposure to extreme temperatures and hazards, and must avoid even moderate exposure to wetness, humidity, noise, and fumes. Tr. at 370-71. Dr. Morgan expected Plaintiff's impairments to cause her to be absent from work more than three times per month. Tr. at 371.

In an undated letter, Dr. Morgan also stated that he did not consider Plaintiff capable of gainful employment. Dr. Morgan said that he based this conclusion on the following: Plaintiff

has intractable migraines that are refractory to standard therapy, she is stress intolerant, she had fibromyalgia, and she has chronic back disease related to degenerative disc and joint disease.  Dr. Morgan acknowledged that Plaintiff's lumbar and cervical spine were interpreted as "normal" in 2004, but stated that he "do[es] not feel they reflect her DDD [degenerative disc disease]."  Tr. at 241. Additionally, in an August 21, 2007 letter to the ALJ, Dr. Morgan stated that Plaintiff had only become disabled since July 29, 2004.  Tr. at 373.

Plaintiff's applications for a period of disability and disability insurance benefits were denied initially on September 29, 2004, and again on reconsideration on December 6, 2006. Plaintiff then testified at an administrative hearing before ALJ Frank Letchworth on August 17, 2007 in Middlesboro, Kentucky.  The ALJ again denied Plaintiff's disability applications by written opinion on October 25, 2007.  On February 2, 2008, the Social Security Appeals Council denied Plaintiff's request for review, and the ALJ's decision thus became the final decision of the Social Security Administration.  Plaintiff then brought the instant action before this Court to challenge the ALJ's unfavorable disability decision.

## II.    Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d

9

284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

**III.     Analysis**

**A.     Arguments and Governing Law**

Plaintiff alleges that the ALJ committed several reversible errors in reaching his decision that Plaintiff has not been under a disability at any time since March 24, 2006.  First, Plaintiff argues that the ALJ erred in evaluating Plaintiff's testimony regarding her pain, symptoms, and limitations.  Second, Plaintiff argues that the ALJ erred by failing to give adequate weight to the opinion of Dr. Morgan, Plaintiff's treating source.  Finally, Plaintiff also argues that the ALJ erred in posing a hypothetical to the vocational expert [hereinafter "VE"] that did not also address Plaintiff's psychological impairments.  According to Plaintiff, because of these alleged errors, the ALJ's conclusions are not supported by substantial evidence and the case should either be reversed or be remanded to the Social Security Administration.

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to

determine whether a Social Security disability claimant qualifies as legally disabled, and is thus

entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1527(e)(1).  To make this

determination, the ALJ must perform a five-step analysis, as follows:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1520,

404.920).  An impairment or combination of impairments is considered "severe" if it

"significantly limits [the claimant's] physical or mental ability to do basic work activities."  20

C.F.R. § 404.1520(c).  Moreover, "an impairment can be considered not severe only if it is a

slight abnormality that minimally affects work ability regardless of age, education, and

experience."  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  While the claimant bears the

burden of proof for the first four steps of this process, if she does so, the burden shifts to the

Commissioner for the final step.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 498 (6th

Cir. 2006).

In addition, a two-part analysis is used to evaluate the credibility of a claimant's

allegations of disabling pain.  First, the ALJ must determine whether the claimant has an

11

underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 929(a). Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do basic work activities. *Id.* Relevant factors that may be considered in this evaluation include: the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment undertaken to relieve the symptoms; other measures undertaken to relieve the symptoms; and any other factors bearing on the ability of the claimant to perform basic work activities. *Id.*; *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

In the instant case, the ALJ performed the requisite five-step process to evaluate Plaintiff's disability claim. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 24, 2006, the first date of the unadjudicated disability period. ALJ's Opinion at 4. Second, the ALJ determined that Plaintiff has the severe impairments of degenerative joint disease and non-insulin dependent diabetes mellitus. *Id.* The ALJ then went on to find, however, that none of these severe impairments, either alone or in combination, met or medically equaled an impairment in the Social Security listings. *Id.* at 5. The ALJ then determined that Plaintiff has the RFC to perform medium work, except for that requiring climbing ladders or exposure to hazards. *Id.* Finally, the ALJ used the assistance of a VE to find that there are jobs available in significant numbers in the national economy that Plaintiff is still able to perform. *Id.* at 8. As such, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act, and has not been at any time since March 24, 2006. *Id.* at 9.

12

In addition, the ALJ also followed the two-step process for evaluating complaints of disabling pain.  The ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.  *Id.* at 6.

**B.     The ALJ Correctly Evaluated Plaintiff's Testimony Regarding her Pain, Symptoms, and Limitations**

The ALJ found that Plaintiff's credibility regarding her statements describing the intensity, persistence, and limiting effects of her symptoms is "not entirely credible."  *Id.* Plaintiff argues that the ALJ erred in this regard by failing to properly evaluate Plaintiff's testimony and credibility regarding her pain, symptoms, and limitations.  She says that the ALJ failed to provide the required specific rationale for discounting her credibility and rejecting her testimony.  Plaintiff further alleges that her medical records, length of treatment, and testimony provide objective medical evidence that supports her disability allegations.

The Court disagrees with Plaintiff.  It is true, as Plaintiff asserts, that an ALJ must "explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Rogers*, 486 F.3d at 248 (quoting Social Security Ruling 96-7p).  However, notwithstanding Plaintiff's claims to the contrary, this is precisely what the ALJ did in explaining his own credibility determination.

First of all, the ALJ discussed a great deal of the objective record medical evidence that appears inconsistent with Plaintiff's subjective complaints about her pain and other symptoms.  Plaintiff alleges severe psychological impairments of depression and anxiety, yet the record

13

reveals that she has never sought any formal mental-health treatment, nor has Dr. Morgan ever referred her to any, and she has never required emergency or inpatient care for her alleged psychological problems.  Although Plaintiff has taken prescription medications for these impairments in the past, she testified that she stopped taking them due to alleged unpleasant side effects.  As Defendant notes, however, complaints about these side effects are not mentioned in the record.  As such, the Court finds nothing to prove that these alleged side effects were the true reason Plaintiff stopped taking her psychological medications, rather than her belief that she simply did not need to take them anymore to help with her impairments.  Further, the only mental-health professional to examine Plaintiff, Dr. Raza, assessed her a GAF of sixty to sixty-five, indicating that Plaintiff had no more than moderate symptoms or moderate difficulties in occupational or social functions (for a GAF of sixty) or no more than mild symptoms or only some difficulty in social or occupational functioning (for a GAF of sixty-one to seventy).  Tr. at 265; *see* GLOBAL ASSESSMENT OF FUNCTIONING at 2.  This record evidence clearly undermines Plaintiff's complaints of total disability from any psychological impairment.

Regarding Plaintiff's complaints of disabling pain and other symptoms from her physiological disorders, the ALJ correctly indicated that all of Plaintiff's treatment has been quite conservative in nature.  Plaintiff has not undergone any surgical procedures, physical therapy, or any other aggressive measures to address her supposedly disabling physical impairments.  Plaintiff apparently does not require the use of an ambulatory aid, back brace, TENS unit, or any other pain-control device to help her throughout the day.  Plaintiff has never required emergency or inpatient care for pain management, she has never been referred to pain-management evaluation, and she has never required pain treatment with injection-type therapies such as

14

epidural steroids or the administration of other intramuscular or intravenous pain medications.

Moreover, the ALJ also pointed out that all of Plaintiff's clinical and diagnostic examinations have been unremarkable, and in particular, there is no documentation of any musculoskeletal abnormality which could reasonably be expected to produce the extreme degree of pain Plaintiff alleges she has. Plaintiff further admitted that she has not even bothered to have testing done in four or five years, indicating that improving her symptoms may not be her top priority. As noted above, Plaintiff has never undergone aggressive treatment measures for her pain. Instead, Plaintiff has only taken a variety of medications, and considering the many years she has followed this regimen as her sole form of pain treatment, it can be fairly presumed that this has given her adequate relief such that she is not fully disabled. Plaintiff even admitted several times that her medications do provide at least temporary relief, and also that soaking in hot water helps alleviate her pain. Tr. at 143, 191, 223-24, 255-56. Plaintiff stated that her diabetes have come under control through medication and weight loss. Tr. at 56; ALJ's Opinion at 7. Plaintiff also claims hypertension as a disabling impairment, but admitted that her medication helps control her blood pressure. Tr. at 62. Her blood pressure readings, moreover, have been relatively normal throughout the years. Objective evidence like this greatly undermines Plaintiff's subjective description of her pain, symptoms, and limitations and supports the ALJ's credibility analysis.

In addition, the ALJ focused on Plaintiff's reported activities of daily living as indicative of further discrepancies between her subjective allegations and the objective evidence of record. Plaintiff claims to be severely debilitated and totally unable to function because of her alleged impairments. Plaintiff told Dr. Raza that she cannot even stand for more than ten minutes and is

15

unable to do many chores on a given day.  Tr. at 264.  However, Dr. Raza stated his belief that Plaintiff was exaggerating her limitations here.  Tr. at 264.  Plaintiff also reported a wider range of activities she is able to perform than would normally be expected from one who claims to be totally disabled.  For example, Plaintiff says she is occasionally able to dust her house, do laundry, wash dishes, and vacuum a little.  Normally, Plaintiff also reads, watches television, does puzzles, prepares quick meals, cares for her personal needs, talks on the telephone, sits on her porch, walks in her yard and on the street behind her house, goes shopping, drives a little, visits with family, and manages her and her husband's finances.  Tr. at 171-76.  Plaintiff even admitted that she sometimes still drives her motorcycle to visit different places, only not as often as she used to.  ALJ's Opinion at 7.  Plaintiff's reported activities clash with her testimony about the limiting effects of her alleged impairments.  This supports the ALJ's credibility finding.

By discussing the objective record evidence that contradicts with and undermines Plaintiff's subjective testimony about her pain, symptoms, and limitations, the ALJ has provided a sufficiently detailed explanation for his dismissal of Plaintiff's credibility.  No reversible error was committed here.

## C.    The ALJ Gave Appropriate Weight to Dr. Morgan's Opinions

Plaintiff next argues that the ALJ failed to adequately consider Dr. Morgan's medical opinions in making his disability determination.  Plaintiff states that because Dr. Morgan was Plaintiff's treating physician and has treated Plaintiff over a number of years, the ALJ should have given controlling weight to Dr. Morgan's opinions.  Doing so, asserts Plaintiff, would necessarily have resulted in a conclusion that Plaintiff is totally disabled and incapable of performing any gainful employment.

16

The Court again disagrees with Plaintiff.  When considering the record medical evidence for the disability determination, the Social Security regulations direct the ALJ to place varying amounts of weight on the evidence, which may take the form of medical opinions, depending on the type of medical source the evidence comes from. Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments. 20 C.F.R. § 404.1527(a)(2). Medical sources refer to three different types of sources that provide evidence about a claimant's impairments: treating sources, nontreating sources, and nonexamining sources. *Id.* § 404.1502. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided, the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. *Id.* A nontreating source is a physician, psychologist, or other acceptable medical source who has examined the claimant but does not have, or did not have, an ongoing treatment relationship with the claimant. *Id.* A nonexamining source is a physician, psychologist, or other acceptable medical source who has not examined the claimant but provides a medical or other opinion in the claimant's case. *Id.*

The ALJ must evaluate every medical opinion he receives, regardless of the type of medical source it comes from. *Id.* § 404.1527(d). More weight is to be given to opinions of treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ." *Id.* § 404.1527(d)(2). The ALJ must give an opinion of a treating source controlling weight in his disability determination if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques

17

and . . . not inconsistent with the other substantial evidence" in the claimant's case record. *Id.* If the treating opinion is not given controlling weight, it must be evaluated according to other factors, such as length, nature, and extent of the treatment relationship; frequency of the examination; supportability; consistency; specialization of the source; and any other factors brought to the ALJ's attention. *Id.* § 404.1527(2)-(6).

It does not appear to be disputed by Defendant that Dr. Morgan qualifies as Plaintiff's treating source. Indeed, the record reflects that Plaintiff made five visits to Dr. Morgan since March 24, 2006.[1] *See* Tr. at 283, 334, 350, 354, 361. Thus, during the unadjudicated disability period, Plaintiff has been treated by Dr. Morgan for nearly one year. Also, the record reveals that Dr. Morgan did not simply examine Plaintiff during her year's worth of doctor visits; Dr. Morgan also prescribed medication for Plaintiff's symptoms after these visits. Prescribing medication is clearly a form of medical treatment, albeit a minimal one. The Court accepts Plaintiff's designation of Dr. Morgan as Plaintiff's treating source.

The fact that Dr. Morgan is properly considered Plaintiff's treating source, however, does not automatically mean that any medical opinions he issued should have been given controlling weight in Plaintiff's disability determination. The Social Security regulations state the following about the allocation of appropriate weight for treating sources: "*If* we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and* is not inconsistent with

_____

[1] Defendant states that Plaintiff only visited Dr. Morgan a total of four times since March 24, 2006: on August 7, 2006; November 15, 2006; February 1, 2007; and March 19, 2007. Defendant's Brief at 8. The record clearly shows that Plaintiff also visited Dr. Morgan on April 17, 2006, making the total number of visits five rather than four. *See* Tr. at 334.

18

the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R.

§ 404.1527(d)(2) (emphasis added). Only if these two conditions, i.e., well-supported by medical

data and not inconsistent with other evidence, are satisfied is the opinion entitled to controlling

weight. Otherwise, the ALJ is entitled to give the opinion whatever weight is merited it when

compared to the other evidence of record.

The opinions in question include an undated letter from Dr. Morgan stating his belief that

Plaintiff is not capable of gainful employment. Tr. at 241. In the opinion, Dr. Morgan said he

based his belief on the fact that Plaintiff has intractable migraines that are refractory to standard

therapy, that she is stress intolerant, that she had fibromyalgia, and that she has chronic back pain

related to degenerative disc and joint disease. Dr. Morgan also acknowledged that Plaintiff's

lumbar and cervical spine were interpreted as "normal" in 2004, but stated that he "do[es] not

feel they reflect her DDD [degenerative disc disease]." Tr. at 241. In addition, Dr. Morgan

stated in an August 21, 2007 letter than Plaintiff had become disabled on July 29, 2004. Tr. at

373. Nothing more of consequence is stated in this letter. Finally, Dr. Morgan provided a

physical RFC assessment on August 13, 2007. Here Dr. Morgan said Plaintiff can lift ten pounds

occasionally and less than ten pounds frequently; that she can stand, walk, and sit less than two

hours in an eight-hour workday; that she can sit fifteen minutes and stand five minutes before

changing position; that she must walk around five minutes at thirty-minute intervals; and that she

needs to be able to shift and lie down during the day. Tr. at 369-70. Dr. Morgan also detailed

numerous physical and environmental restrictions and opined that Plaintiff's impairments would

require her to be absent from work more than three times per month. Tr. at 370-71.

In this case, the ALJ quite obviously determined that Dr. Morgan's medical opinions

were neither well-supported by medically acceptable clinical and laboratory diagnostic

techniques nor consistent with the other substantial evidence in the case record.  The ALJ stated

that "the limitations cited [in Dr. Morgan's opinions] appear extreme when juxtaposed against

the objective medical evidence."  ALJ's Opinion at 8.  The ALJ compared these rather extreme

limitations with those mentioned in the state-agency experts' opinions, in which they concluded

that Plaintiff is actually capable of medium work, subject to physiological limitations.  *Id.*  The

ALJ further noted that the restrictions he assessed in his own RFC determination were also

predicated on new medical evidence and hearing testimony.  This is obviously evidence that Dr.

Morgan would not have been able to consider when he gave his medical opinions, meaning that

the ALJ (and perhaps also the state-agency experts, though this is not clear) had a fuller record on

which to base his RFC and disability determination than did Dr. Morgan.  This rationale plainly

goes towards the two aforementioned reasons for rejecting a treating-source opinion, particularly

the "not inconsistent with other substantial evidence in the case record" criterion.

Moreover, the ALJ discussed a volume of medical evidence and other findings

throughout his written opinion that by their very nature undermine Dr. Morgan's assessments of

Plaintiff's disability status.  For example, the ALJ noted that Dr. Morgan kept Plaintiff on the

same conservative treatment regimen all the time Plaintiff has been his patient, and also that most

of Plaintiff's visits to Dr. Morgan were only for routine follow-ups or for medication refills.  *Id.*

at 4.  These records were also noted to be devoid of objective clinical commentary apart from

Plaintiff's subjective allegations, downgrading their usefulness to Plaintiff as probative evidence.

*Id.*  Plaintiff's cervical and lumbar spine x-rays from 2004 were normal, despite Dr. Morgan's

belief that Plaintiff had degenerative disc and joint disease.  *Id.*  Dr. Morgan's records showed

predominantly normal blood pressure readings throughout his treatment of Plaintiff, and there were no references to diabetes-related concerns. *Id.* Plaintiff only had a single emergency room visit for migraines, and following conservative treatment for them, Plaintiff was released on the very same day. *Id.*

The ALJ also discussed Dr. Croce's report for further examples of evidence contradictory to the conclusions in Dr. Morgan's opinions. Dr. Croce stated that Plaintiff's gait was normal, that she was not in any acute distress, that she had only very mild limitations in her hips, knees, and lower back, that the supine straight leg raising tests were inconsistent, and that she had normal straight leg raising results when seated. *Id.* The ALJ repeated Dr. Croce's findings that Plaintiff showed no signs of swelling, redness, erythema, or joint warmth, and that her extremities were free of clubbing, cyanosis, and edema. *Id.* Further, there was no evidence of muscle spasm, nerve root compression, or any other significant musculoskeletal abnormality, Plaintiff was able to walk heel-to-toe and squat, and she was neurologically intact. Importantly, the ALJ also noted Dr. Croce's conclusion that there was no evidence of any significant limitation in Plaintiff's ability to perform routine exertional and other duties usually associated with work, adding only that Plaintiff might have trouble with activities requiring constant or repetitive acts and that she was subject to certain physiological limitations. *Id.*

This record medical evidence, cited by the ALJ, plainly clashes with the views expressed in Dr. Morgan's opinions. Further, although the ALJ did not expressly state that this evidence serves to diminish the evidentiary weight accorded to Dr. Morgan's opinions, this conclusion is quite obviously implicit from the very nature of the evidence. Implicitly attacking the evidentiary weight of a treating-source opinion is an acceptable practice in Social Security disability

21

determinations.  *See Nelson*, 195 Fed. Appx. at 470 (finding that a treating-source opinion was properly rejected by the ALJ where other record evidence indirectly attacked the supportability and consistency of the opinion, even where no explicit indication of the weight given to the treating-source opinion was provided by the ALJ).  Reciting the large amount of medical evidence that contradicts Dr. Morgan's findings permits the ALJ to grant little weight to Dr. Morgan's opinions.

The Court also wishes to note just a few other matters that make it acceptable for the ALJ to reject Dr. Morgan's opinions.  In two of the three opinions submitted by Dr. Morgan, he purports to state both that Plaintiff is not capable of gainful employment and that she became disabled on July 29, 2004.  Tr. at 241, 373.  Such statements are actually legal conclusions about Plaintiff's disability status and eligibility for disability insurance benefits.  The Social Security regulations make clear that such conclusions are not medical opinions, but issues specifically reserved to the Commissioner of Social Security.  *See* 20 C.F.R. § 404.1527(e)(3).  Dr. Morgan's conclusions on these matters are therefore entitled to no weight in the ALJ's disability determination.  In addition, as Defendant points out, the limitations put forth in Dr. Morgan's RFC assessment conflicts with those found in the previous ALJ's March 23, 2006 disability determination, where Plaintiff was found not disabled, as well as able to perform medium work.  This previous determination is a final, binding decision that must be accepted by the Court absent evidence of a deterioration in Plaintiff's physical condition.  *See Drummond*, 126 F.3d 837.  The record evidence the ALJ relied on indicates that no such deterioration has occurred.  Finally, Dr. Morgan provides no explanation whatsoever as to why he believed Plaintiff's impairments became disabling on July 29, 2004.  As Defendant notes, this date bears no relation to any

alleged disability onset date, and no record evidence supports an inference that Plaintiff became disabled at that time. For all these reasons, the ALJ gave appropriate and adequate weight to Dr. Morgan's medical opinions. No reversible error was committed here.

**D.      The ALJ Did Not Err in Posing his Hypothetical Question to the VE**

Plaintiff's final argument is that the ALJ erred in posing his hypothetical question to the VE because he failed to include Plaintiff's mental impairments in the hypothetical. Plaintiff claims that because the ALJ omitted this information from the question, the VE's answer, that there are a significant number of jobs in the national economy that Plaintiff is still able to perform, cannot be considered substantial evidence to support the ALJ's conclusions.

The Court also disagrees with Plaintiff in this matter. The ALJ based his determination about the availability of work that Plaintiff is able to perform on the VE's answer to a hypothetical question about what jobs an individual with Plaintiff's limitations and RFC could perform. As Plaintiff says, the ALJ's hypothetical question took into account Plaintiff's alleged physical impairments and limitations, but not his alleged psychological impairments and limitations. In addition, Plaintiff is correct that a VE's assessment of available jobs can only constitute substantial evidence if the hypothetical question incorporates all of a claimant's impairments and their effects. However, since the ALJ found that there has been no deterioration in Plaintiff's psychological status since March 24, 2006, he determined that Plaintiff has no severe psychological or mental impairment. As such, the ALJ was not required to include information about Plaintiff's alleged mental impairments into the hypothetical.

This leaves only one issue to be addressed in order for the Court to resolve Plaintiff's argument: whether substantial evidence supports the ALJ's finding that Plaintiff has no severe

mental impairment, or specifically, that there has been no deterioration of any such impairment since March 24, 2006. A review of the record shows that substantial evidence does indeed support this finding. As discussed earlier, the ALJ indicated that Plaintiff has never sought out or required any emergency or inpatient mental-health treatment; instead, her treatment has been very conservative in nature. No doctor or mental-health professional has ever referred Plaintiff to this kind of extensive mental healthcare. Although Plaintiff was prescribed depression medication, she stopped taking it due to alleged side effects that, inexplicably, are mentioned nowhere in the record except for the hearing transcript.

Moreover, Dr. Raza, Plaintiff's only examining mental-health professional, also stated that Plaintiff was cooperative; that her thought process was logical, sequential, and goal-oriented; that she had no distractibility; that she was alert; and that she was oriented to place, person, situation, and contact with reality. Tr. at 262. Although Dr. Raza diagnosed Plaintiff with post-traumatic stress disorder and general mood disorder, he also assessed a GAF of only sixty to sixty-five, a reading that reflects only mild (at sixty-one to seventy) or moderate (at sixty) symptoms or limitations. Tr. at 265; ALJ's Opinion at 7; *see* GLOBAL ASSESSMENT OF FUNCTIONING at 2. Dr. Raza concluded that Plaintiff has a fair understanding, can remember simple one-to-two-step instructions, has sustained concentration and persistence to complete tasks, and has good social interactions with family, but that she is unable to complete tasks in normal amounts of time when the tasks require back bending. Tr. at 265. Such an assessment certainly does not speak to any severe psychological impairment on Plaintiff's part. Finally, in reviewing Plaintiff's alleged mental impairments, the state agency examiners concluded that Plaintiff had only mild limitations in her functioning, and that because of this, she did not have a

24

severe mental impairment. Tr. at 296-306, 310-20.

Substantial evidence clearly supports the ALJ's finding that Plaintiff has no severe mental or psychological impairment, or that no such impairment has deteriorated since March 24, 2006. As such, the ALJ was correct to exclude such alleged impairments from the hypothetical question posed to the VE, and the VE's answer can provide substantial evidence that there are jobs available in significant numbers in the national economy that Plaintiff can perform. No reversible error was committed here.

In sum, the Court holds that substantial evidence supports the ALJ's decision that Plaintiff has not been disabled at any time since the first day of the unadjudicated disability period, March 24, 2006. It bears repeating that substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 285-86. Therefore, if substantial evidence supports the ALJ's decision, the decision must be upheld by the Court, even if another outcome could reasonably have been reached from the record evidence. *Jones*, 336 F.3d at 475. Since the ALJ's non-disability decision applies the correct legal standards and is supported by substantial evidence, the Court will uphold it. *See Warner*, 375 F.3d at 390. No reversible error was committed.

**WHEREFORE**, the Court being sufficiently advised, and for the reasons stated above:

1. The Plaintiff's Motion for Summary Judgment is **DENIED**; and

2. The Defendant's Motion for Summary Judgment is **GRANTED**.

Dated this 14th day of October, 2008.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**